IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DELORES DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:07cv478-CSC |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. The case is now before the court for

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3).  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

2

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.** The plaintiff was 34 years old at the time she applied for benefits. (R. 59). She has a high school attendance certificate. (R. 133 & 272). Her prior work experience includes work as housekeeper cleaner, short order cook, and cabinet assembler. (R. 18). Following the administrative hearing, the ALJ concluded that the plaintiff has severe impairments of "type II diabetes mellitus and Thyrotoxicosis (Graves' disease)," and non-severe impairments of "myopia and history of a learning disability." (R. 17). The ALJ concluded that the plaintiff could return to her past relevant work as a short order cook and cabinet assembler.

(R. 19). In the alternative, the ALJ concluded that the plaintiff was not disabled because she had the residual functional capacity to perform other work in the national economy. (*Id.*) Consequently, the ALJ concluded that the plaintiff was not disabled.

**B. Plaintiff's Claims.** The plaintiff presents three issues for the Court's review. As stated by the plaintiff, the issues are as follows:

1. The ALJ erred egregiously in failing to develop the record. (Pl's Br. at 4).

2. The ALJ's RFC [residual functional capacity] findings are not based on substantial evidence. (Pl's Br. at 6).

3. New and material evidence. (Pl's Br. at 7).

## IV. Discussion

Although the plaintiff presents issues related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence, *see Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987), the court concludes that the ALJ erred as a matter of law and thus, this case is due to be remanded for further proceedings.

An administrative law judge has a duty to develop a full and fair record. *Kelley v. Heckler,* 761 F.2d 1538 (11th Cir. 1985). The ALJ is not free to simply ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839, 840-841 (11th Cir. 1992). When there is a conflict, inconsistency or ambiguity in the record, the ALJ has

4

an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected one opinion or record over another. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence."*Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981).[4] "Failure to do so requires the case be vacated and remanded for the proper consideration." *Hudson v. Heckler,* 755 F.2d 781, 785 (11th Cir. 1985). As will be explained below, the court concludes that the ALJ failed to fully and fairly develop the record concerning the plaintiff's intellectual functioning. At a minimum, the record demonstrates that there exists a conflict or ambiguity in the evidence regarding the plaintiff's intellectual functioning and whether she suffers from mental retardation.

In this case, the ALJ concluded that the plaintiff suffers from a non-severe impairment of "history of learning disability." (R. 17). He noted that the plaintiff completed the twelfth grade and received a graduation certificate. (*Id.*). However, he also indicated that she "was in special education the fifth through twelfth grades." (*Id.*).

The plaintiff was represented by a non-attorney representative before the ALJ. On April 6, 2006, the representative wrote the ALJ expressing his concern regarding the plaintiff's intellectual abilities. "The problem with this case is that my client is special education student, . . . We are dealing with mental retarded (sic) (see school records)." (R. 53). The school records from the Chilton County public schools indicate that, at least beginning in the sixth

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

5

grade and continuing until she completed high school, the plaintiff was placed in special education classes.[5] (R. 133). Although she passed each grade, the plaintiff testified that the school system had to pass her – "they give you a 60 and pass you." (R. 273). There is also a notation on her seventh grade records of "EMR" which is the common abbreviation for "educable mentally retarded." (*Id.*) She was not ranked in her class. (*Id.*). According to the plaintiff, she graduated with an attendance certificate. (R. 272). Her test scores demonstrate that she failed the Alabama High School Exit Examination at least four times. (R. 134). Finally, during the administrative hearing, the plaintiff's representative requested that the ALJ secure the plaintiff's school records to verify her intellectual functioning.

> And Your Honor, another fact of that, I was late getting it to you, but it plays an important part at this hearing, when I went back to get her educational records – that's when I discovered we had a problem with her mental, as well, as a medical problem. And she has been a longtime student of special education. I was not able to get the printout records from the County Board of Education, by not being an attorney, but those records would substantiate what I'm saying that we've got a problem here.

(R. 270-71).

Thereafter, the ALJ sent the plaintiff for a consultative psychological evaluation by Dr. Elizabeth Cates. (R. 271 & 166-170). Unfortunately, it appears that the consultative psychologist was not made aware of the possibility that the plaintiff's intellectual functioning was limited or impaired. For example, Dr. Cates notes that the plaintiff completed twelfth grade. (R. 166). Dr. Cates opined that the plaintiff's motivation and cooperation were "very

---

[5] The plaintiff testified that she was placed in special education classes since "maybe the third or fourth grade." (R. 272).

6

poor" and she was malingering. (R. 168). However, there is no indication that Dr. Cates was aware that the plaintiff was in special education classes for at least 6 grades, had an "EMR" designation on her records, or graduated with an attendance certificate.

Finally, the ALJ concluded that the plaintiff had a non-severe impairment of "history of learning disability." (R. 17). The only notation in the record regarding a learning disability is from a non-examining consultative physician who concluded that the plaintiff had a "history of LD." (R. 156). His conclusion appears to be based on his notes that she "was in special ed for English [and] Math she states LD only." (R. 164). The problem with relying on this notation is there is no other supporting documentation or evidence in the record.

There is sufficient evidence from which the ALJ should have concluded that it was necessary to require additional evidence regarding the plaintiff's intellectual functioning before rendering a decision regarding her disability. Without developing the record more fully regarding the plaintiff's intellectual functioning or resolving the conflict in the evidence between Dr. Cates, the school records, and the non-examining consultative physician, the ALJ could not make an informed decision based on the record before him and thus, his decision is not supported by substantial evidence. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). Moreover, the ALJ must explore and weight all relevant facts, both favorable and unfavorable, to determine disability eligibility. *Cowart,* 662 F.2d at 735-36. Therefore, in light of the inadequate development of the record, the court cannot determine whether the ALJ's conclusion that the

plaintiff is not disabled is based on substantial evidence.[6]

Accordingly, the court concludes that this case should be remanded to the Commissioner for further proceedings consistent with this recommendation, including but not limited to, securing the plaintiff's school records from the Chilton County Board of Education and securing further appropriate evaluations of her intellectual functioning by a qualified examiner made fully aware of plaintiff's history.[7]

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for proceedings consistent with this opinion.

A separate order will issue.

Done this 30th day of January, 2008.

                                                 /s/Charles S. Coody  
                                                 CHARLES S. COODY  
                                                 CHIEF UNITED STATES MAGISTRATE JUDGE

---

[6] A review of the record clearly demonstrates that the ALJ's hypothetical questions to the vocational expert were improper because his questions failed to consider any limitation in the plaintiff's intellectual functioning. Consequently, the ALJ could not have questioned the vocational expert properly. On remand, the Commissioner should insure that the ALJ fulfills his responsibility to include in his questions to the vocational expert, all of the plaintiff's impairments.

[7] At the conclusion of her report Dr. Cates states, "Ms. Davis does not appear to have a mental impairment." (R. 168). While one can only wonder what Dr. Cates might have said had she known that the plaintiff spent many years in special education classes, it was up to the ALJ to dispel the ambiguities.

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

   (b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).